OPINION OF THE COURT
Leon Ruchelsman, J.
The plaintiff has moved pursuant to CPLR 3212 for summary judgment on the causes of action which he has alleged in his complaint against defendants. The defendants have op *263 posed the motion and papers were submitted by both parties. After reviewing the arguments of all parties this court now makes the following determination.
Background
Prior to July 4, 1996 Helen Schiliro maintained a savings bank account at Republic National Bank in trust for the plaintiff, her nephew, Lawrence Cianciulli. On July 4, Ms. Schiliro spoke with the defendant her niece, Susan Sanford, and indicated that she wished to close out that account and have the balance of the account forwarded to her. Thereupon, Schiliro completed a withdrawal slip and asked Ms. Sanford to mail the withdrawal slip to the bank. On July 4, Sanford mailed the slip to the bank.
Ms. Schiliro died on July 10 and the bank received the withdrawal slip on July 15. Unaware of Ms. Schiliro’s death the bank issued a check to Ms. Schiliro for the full amount of the account. Sanford retrieved the check and deposited it in her private bank account.
This lawsuit commenced a short time later by the plaintiff seeking to recover the amount of the bank account, a total of $58,072 plus interest accrued. The plaintiff maintains that upon his aunt’s death the money in the account automatically passed to him as the sole beneficiary of the trust. The defendant maintains that the trust was revoked on July 4, when Schiliro completed a withdrawal slip thereby closing the account.
Conclusions of Law
In the landmark case of Matter of Totten (179 NY 112 [1904]), the Court acknowledged the validity of savings bank trust accounts. The Court noted that savings accounts in trust for another were merely tentative trusts revocable at any time by the depositor. The Court concluded that if no revocation was effectuated then a presumption arises that “an absolute trust was created as to the balance on hand at the death of the depositor” (supra, at 126). A Totten trust may be revoked either in whole or in part by withdrawing the funds during the depositor’s lifetime (Matter of Beck, 98 AD2d 860 [3d Dept 1983]). The rules governing Totten trusts and the manner in which they may properly be revoked are codified in EPTL 7-5.1 et seq. Specifically, EPTL 7-5.2 (1) states that a Totten trust may be revoked in whole or in part by withdrawals against the account “made or authorized by the depositor”.
*264 In this case the plaintiff argues that the money which was in his aunt’s Totten trust account accrued to him since the trust was never revoked before her death. He maintains that the withdrawal slip sent by her to the bank arrived at the bank after she was already deceased. Thus, at the time of her death no revocation had ever taken place. The defendant argues that the trust was effectively revoked on July 4, when the withdrawal slip was completed. The defendant maintains that the delay which took place before the bank received the slip was merely a delay in the delivery of the slip and had no relevance as to the moment of revocation.
The key question then is whether the trustor withdrew the money of the account and hence revoked the trust before she died. If the trust was properly revoked before her death then the plaintiffs summary judgment motion must fail. If, on the other hand, the deceased did not revoke the trust before she died then the plaintiff will be successful in his summary judgment motion. The determining factor then is the point a bank withdrawal is effectuated.
There is scant case law on the exact moment a withdrawal is effective since in the usual case it is legally irrelevant. Instructive to the analysis in this case is Hucko v Apple Bank for Sav. (210 AD2d 39 [1st Dept 1994]). In that case the depositor had established two Totten trust accounts for Hucko. He wanted to revoke those accounts and open new accounts in trust for a different beneficiary. On November 7, the depositor sent the withdrawal slips to the bank and the bank records indicated the accounts were closed on November 15. The new accounts were opened on November 14 and the depositor died on November 17. Hucko sued for recovery of the money from the two accounts and argued that the banking irregularity which was demonstrated by the fact that the new account was opened one day before the old one was closed evidenced that a valid revocation had not taken place which conforms to the rules as outlined in EPTL 7-5.2 (1). The Court rejected that argument (among others) and noted that the dates of the withdrawal slip were inserted by bank officials pursuant to UCC 3-115 (1). The Court noted that (at 41) “notwithstanding any confusion as to the precise date of termination of the original accounts, what is clear is that the withdrawal slips were received by defendant no later than November 15, two days prior to decedent’s death. That is what really matters. Any further factfinding for the purpose of determining the precise date of transfer of the funds prior to November 17 will not change that result”.
*265 This case clarifies that the precise date of a withdrawal is inconsequential as long as the withdrawal takes place before a legally significant event, in that case the depositor’s death. However, in the case at bar the precise moment of withdrawal is the determining factor by which to evaluate the plaintiffs summary judgment motion.
It cannot seriously be entertained that a withdrawal becomes effective the moment the withdrawal slip is completed. This is especially true in cases as here where the contents and directions of the slip will not be satisfied by the bank for some time. A withdrawal can only truly be considered as having taken place when processed by the bank. In fact Hucko (supra) can be understood as reaffirming that principle. Without the bank’s association regarding a banking matter a customer’s instructions are mere intentions having no validity in the law.
However, there are cases which discuss the notion of symbolic withdrawals. Thus, in Korton v Fie (128 Misc 2d 333 [Sup Ct, Suffolk County 1985]), the court held that a withdrawal had taken place even where the depositor had failed to complete a withdrawal slip. In that case the depositor had gone to the bank to change the beneficiaries of her Totten trust accounts. The depositor executed new signature cards and changed the names of the beneficiaries in the account passbook. However, no money was ever withdrawn from the account, the account was not closed and the bank account numbers were not changed. The plaintiff, an individual who was removed as a beneficiary, sued to recover the proceeds on the ground that the beneficiary changes did not conform with the law and were therefore ineffective. Specifically, the plaintiff contended that the depositor failed to actually withdraw the money from the account and, therefore, did not sufficiently revoke the Totten trust. The court rejected that argument and found the failure to execute withdrawal slips not fatal to effect a change of beneficiaries. The court noted that the changes of beneficiaries on the account passbook coupled with the changes on the signature cards were indications of symbolic withdrawals. The failure to effectuate actual withdrawals would not prevent the clear intent of the depositor from being fulfilled.
That case merely affirmed the manner in which beneficiaries may be changed on an existing Totten trust account. Korton (supra) implied that it would not be necessary for a depositor who wished to change beneficiaries of an existing account to engage in the laborious process of closing the account simply to reopen it a few moments later naming new beneficiaries. The *266 court in Korton noted that its ruling did not contravene EPTL 7-5.2 since the Law Commission which had recommended the enactment of this section equated altering the form of the deposit with withdrawal of the funds. The court concluded that all the other changes which the depositor had executed indicated the form of the deposit was altered, hence a symbolic withdrawal.
The facts in the case at bar are significantly different. In this case there was no other expression of intent nor any other action on the part of Ms. Schiliro which would lead the court to conclude that a withdrawal had taken place. The withdrawal slip is the only evidence in support of the revocation of the Tot-ten trust account. As stated previously, the completion of a withdrawal slip without other indicia of activity on the part of the bank is legally insufficient to establish an effective withdrawal. A different result might arise if the bank would unduly delay the processing of a withdrawal slip. However, based on the facts as presented in this case there is sufficient evidence which would compel the court to grant judgment in the plaintiffs favor as a matter of law (Zuckerman v City of New York, 49 NY2d 557 [1980]). Thus, the plaintiffs motion for summary judgment is granted.